**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

DONALD TERRY OBERLOH,               )
                                    )
                    Plaintiff,      )
         v.                         )
                                    )
ECLIPS HAIR DESIGN, INC., MELANIE   )        Case No. 3:10-CV-497
A. CHAMBERLAIN, MELANIE A. COATS,   )
and CATHY J. YOUNG,                 )
                                    )
                    Defendants.     )

## OPINION AND ORDER

Donald Terry Oberloh, a *pro se* plaintiff, has filed a motion for contempt (DE 39)

regarding Defendants alleged failure to comply with the parties' Agreed Judgment and

Order (DE 37). Because I find that Oberloh has failed to provide clear and convincing

evidence that Defendants violated the Order, I will deny Oberloh's request.

## BACKGROUND

This dispute began in 2010 when Oberloh filed a complaint alleging various

violations of the Americans With Disabilities Act (ADA) at Defendants' hair salon. (DE

1) In essence, Oberloh alleged that Defendants' parking lot was not ADA compliant.

About two and a half years later, the parties reached an agreement, resulting in an

Agreed Judgment and Order (DE 37). That order states in relevant part:

> The Defendants shall cause the parking lot at the 204 West Mishawaka
> location to be resurfaced in a manner consistent with the requirements of
> the Americans With Disabilities Act Standards for Accessible Design in
> effect at the time this judgment is entered.

The Defendants shall also cause the parking lot at the 204 West Mishawaka location to be painted in a fashion to provide adequate parking for handicapped/ van accessible vehicles and to provide for a clear access path to the main entrance of the business, consistent with the requirements of the Standards for Accessible Design in effect at the time this judgment is entered.

The Defendants shall also cause appropriate signage to be installed consistent with the requirements of the Standards for Accessible Design in effect at the time this judgment is entered.

The Defendants shall complete the modifications described above by August 31, 2013.

(DE 37)

By the middle of August 2013, Oberloh "noticed that work had been completed on the site in question." (DE 41 at 2) Oberloh believed, however, that the work was not ADA-compliant and alerted Defendants' attorney. Defendants' attorney "promptly" responded on August 22, 2013, asking Oberloh for more details on what he believed was out of compliance. (*Id.*) Oberloh did not provide specifics as to what he believed was out of compliance, but did offer to assist Defendants and their architect in fixing the problems. (*Id.* at 3)

When he didn't hear back after about a month, Oberloh filed the instant motion. (DE 39) He argues that Defendants have failed to make the parking lot handicap/van accessible for myriad reasons. The parties briefed the motion and requested some limited discovery, which I allowed. (DE 47) At a later telephonic hearing, the parties agreed that an evidentiary hearing was not necessary, but suggested filing

supplemental briefing.  (DE 51)  I agreed and ordered the parties to follow a

supplemental briefing schedule.  (DE 52)  Defendants filed their opening brief, but I

have heard nothing from Oberloh since that telephonic conference.  He has filed no

responsive brief, despite being separately ordered to do so. (DE 54)  Mail sent to

Oberloh from the Court has been returned as undeliverable because Oberloh has

apparently moved and left no forwarding address. (DE 55)  I will therefore base my

ruling on the parties' briefing on the motion for contempt, Oberloh's interrogatory

responses (filed with the Court), and Defendants' supplemental brief, which I find

sufficient to render my ruling.

## DISCUSSION

A party seeking contempt sanctions for a violation of a court order faces a high

bar.  The party must show by clear and convincing evidence that,

> (1) a court order sets forth an unambiguous command; (2) the alleged
> contemnor violated that command; (3) the violation was significant,
> meaning the alleged contemnor did not substantially comply with the
> order; and (4) the alleged contemnor failed to make a reasonable and
> diligent effort to comply.

*U.S. SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).  In this case, Oberloh hasn't met that

burden.

Although compliance the American with Disabilities Act Standard for Accessible

Design is probably not inherently "unambiguous," my command was clear: Defendants

were to  resurface and repaint their parking lot so as to provide adequate

3

handicapped/van accessible parking and a clear access path to the main entrance, all with appropriate signage. (DE 37) All of these was supposed to comply with the ADA Standards. (*Id.*) And this work was to be completed by August 31, 2013. (*Id.*)

Regarding the date of completion, Oberloh admits that he "noticed that work had been completed on the site in question" by the middle of August 2013. (DE 39 at 2) Although he argues that the work done was insufficient, which I will address in more detail below, I find on this point that Defendants did not violate (or at least made a reasonable and diligent effort to comply with) this portion of the order.

As to Oberloh's individual complaints, I find that he has failed to provide clear and convincing evidence that Defendants are not in compliance with the Order. Although I am mindful that "[a] document filed *pro se* is to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Oberloh simply hasn't come close to meeting the high bar for proving contempt. Instead, he merely cites a laundry list of ADA Standards allegedly violated by Defendants with little-to-no discussion as to why that's the case. (*See e.g.* DE 39 at 4-5; DE 49 at 1-3; DE 42 at 4-5.) Even so, I'll discuss his complaints individually, as they apply to the requirements of the Order.

**Resurfacing**

The Order requires that the parking lot "be resurfaced in a manner consistent with the requirements of the Americans With Disabilities Act Standards for Accessible Design in effect at the time this judgment is entered." (DE 37 at 1) The most recent

ADA Standards were issued in 2010 and were in effect when the Order was entered on July 17, 2013. *See* 2010 ADA Standards for Accessible Design *available at* http://www.ada.gov/2010ADAstandards_index.htm (last visited Mar. 10, 2015).

Oberloh claims Defendants have violated ADA Standards 402 and 403, requiring that the running slopes for accessible routes not exceed a slope of 1:20, and that the cross slope not exceed 1:48. Oberloh doesn't specify what slope he believes the surface of the parking lot is. Instead, he just says that it's not compliant. Defendants have provided affidavits describing how they have measured and calculated the slopes of the accessible routes and that those slopes are all less than 1:20. (DE 53 16-17, 24) That seems to be in compliance with the Standards. Oblerloh provides no evidence to the contrary, so I can't find this is a reason to hold Defendants in contempt.

**Painting/Adequate Parking/Access Path**

*Painting*

The Order further requires that the parking lot be "painted in a fashion to provide adequate parking for handicapped/ van accessible vehicles and to provide for a clear access path to the main entrance of the business" in accordance with the Standards. Regarding painting, Oberloh claims that the access path is not marked in such a way as to discourage parking in it as required by Standard 502.3.3. I don't think that's the case. As evident from the photographs provided by the parties (DE 41-4; DE 53 at 12), the access path is painted with diagonal lines clearly indicating that parking is not allowed in that area. Further, the advisory note to Standard 502.3.3 states that the

"method and color of marking are not specified by these requirements" meaning that there is no particular required method of indicating not parking is allowed. Again, based on Defendants' submissions, this appears to be in compliance. At a minimum, Oberloh has failed to provide any evidence, let alone clear and convincing evidence, to the contrary.

*Adequate Parking*

Regarding adequate parking, Oberloh makes several claims. First, he claims that the minimum number of parking spaces hasn't been met under Standard 208.2. Standard 208.2 requires only one accessible space in a parking lot containing 1-25 spaces. In her sworn affidavit, Defendant Melanie Chamberlin states that the salon's parking lot contains less than 25 spaces. (DE 53 at 2) Therefore, one accessible space is sufficient and Defendants are compliant.

Second, Oberloh claims that the parking lot does not contain a van-accessible space and that the purported van-accessible space is not big enough. First, a van-accessible space is not required under the regulations for Defendants' lot because van parking spaces are required only for lots with six or more accessible spaces. Standard 208.2.4. But, the Order references van-accessible spaces so the Order seemingly requires it. (DE 37 at 1) Even so, Defendants *do* provide a van-accessible space. Under Standard 502, van spaces must be 132 inches wide unless they are adjacent to an access aisle that is greater than 96 inches wide. Defendants' space is 108 inches wide and is adjacent to an access aisle larger than 96 inches. (DE 53 at 8) The space is further designated as

"van accessible" on the sign posted in front of the space. (DE 53 at 10) It appears, therefore, that Defendants have provided a proper van-accessible space and are in compliance. And as with his other complaints, Oberloh doesn't show why this isn't the case.

Third, Oberloh claims that Defendants have not provided a passenger loading zone under Standard 503. Defendants argue that a passenger loading zone is not required by the Standards. I'm inclined to agree, particularly in light of the fact that Standard 503 doesn't state that passenger loading zones are required. And other standards dealing with passenger loading zones, like Standard 209.2, state that the regulations apply to passenger loading zones "where provided." This makes me think that loading zones aren't always required. And even if they are required, Defendants do provide a rather large marked off area next to the van-accessible space that may constitute a passenger loading zone under the regulations. I don't know if it does or doesn't because I don't know the dimensions of that area, but I don't have to decide whether this is a loading zone or even whether loading zones are required because Oberloh provides zero evidence to support his assertion that Defendants have violated this standard. That's reason enough to deny his request.

*Access Paths*

Oberloh further cites various violations regarding the access paths from the van-accessible parking space to Defendants' business. Oberloh claims that Defendants' access path isn't wide enough (Standard 403.5.1) or long enough (Standard 502.3.2), and

so Defendants haven't actually provided an access path as required (Standard 206). The standards require that accessible routes are 36 inches wide and extend the full length of the parking spaces they serve. Standards 403.5.1 and 502.3.2, respectively. Defendants submitted various photographs of the parking lot showing that the accessible route measures 37 inches wide and extends the full length of the van-accessible parking space and the marked off area, all the way to the entrance of the building. (DE 53 at 3-5) That seems to be compliant with the Standards. And since Oberloh doesn't tell me why it's not compliant, and provides me with no contrary measurements or other evidence of his own, I can't find Defendants in contempt here.

Oberloh further claims that the there is no accessible route within the site. (Standard 206.2.2) I agree with Defendants that Standard 206.2.2 appears to apply only to routes connecting multiple buildings or structures on the same site. That's not the case here since Defendants have only one building (DE 53 at 5), so this standard appears to be not applicable.

Oberloh's last complaints about the access route are that it's not the shortest accessible route (Standard 208.3.1) and it doesn't coincide with the paths of general circulation (Standard 206.3). The first claim is curious to say the least because when Defendants originally designated a closer parking space as handicap accessible, Oberloh objected for other reasons and Defendants moved it to its current location (DE 53 at 7, 15), which is still closer than the vast majority of the spaces in the lot. (DE 53 at 3; DE 41-7 at 2) Defendants represent that this is the closest space that allows for van

accessible parking (DE 53 at 7, 15), and I'm inclined to believe them. Since Oberloh provides no evidence as to where a closer compliant space may be, I can't say that Defendants aren't compliant.

For similar reasons, I don't see how the access route doesn't coincide with the general circulation paths. Standard 206.3 requires that the access route must be in the same area as the pedestrian traffic. Since Defendants' business has only one entrance (DE 53 at 15), everyone must use the same general paths and walkways to get to the entrance from the parking lot. (*See e.g.* DE 53 at 3) The access route exactly parallels and in some areas overlaps with that path. (*Id*. at 3-4; DE 41-7) There is simply no other way to get to the business's front door. Here again, Defendants hasn't met his burden for demonstrating non-compliance.

**Signage**

The Order further requires that "The Defendants shall also cause appropriate signage to be installed consistent with the requirements of the Standards . . . ." (DE 37) Oberloh claims that Defendants' signage does not comply with Standard 216.2 pertaining to sign designations and Standard 216.4.3 pertaining to directional signs. Neither of these standards applies to Defendants' obligations under the Order. Standard 216.2 addresses how signs should designate the accessibility of interior rooms. Indeed, the advisory comment makes clear that the standard "applies to signs that provide designations, labels, or names for interior rooms or spaces." Advisory 216.2 Designations to Standard 216.2. That doesn't apply to Defendants' outdoor parking lot.

Further, Standard 216.4.3 addresses directional signs indicating the locations of "accessible means of egress" – in other words, how to find the exit doors. Again, that appears to apply only to interior signs, which is outside the scope of the Order.

Finally, Oberloh claims that the sign Defendants have posted in front of the van-accessible space does not comply with Standard 502.6. That standard requires that parking space identification signs include the International Symbol of Accessibility, are designated "van accessible" where applicable, and must be located at least 60 inches from the ground. Standard 502.6. In the photograph provided by Defendants, the sign at issue plainly displays the International Symbol of Accessibility and states that the space is "van accessible." (DE 53 at 10) In addition, Defendants state that the sign is more than 60 inches tall. (*Id.*) Indeed, Oberloh appears to concede that point by claiming that the sign is actually posted too high. (DE 41 at 5) But nothing in the standards provides a maximum height. And based on the photograph Oberloh provides, the sign appears to be at a pretty standard height. In any event, it doesn't appear to violate the standards and Oberloh provides nothing to the contrary, so there's no reason to find the Defendants in contempt on this point.

**Issues Outside the Scope of the Order**

Oberloh presents a few additional issues that appear to be outside the scope of the Order. First, he claims the entrance to the building isn't handicap accessible. But the Order covers only changes to Defendants' parking lot. Now, I recognize that it might seem like providing accessible doorways is inherent in this agreement – I mean,

10

why do all this work if one can't enter the building?  But the same would be true for rest of the building's interior and that's clearly not covered by the Order.  Instead, the Order requires creating an access path "to the main entrance."  (DE 37 at 1)  If there was an issue with the entrance door, then the parties should have agreed to change the door.  As it stands, the Order doesn't cover the entrance.

And even if it did, Oberloh provides no evidence of non-compliance.  He states that the doors are not self-opening without citing to any provisions in the Standards requiring that.  Indeed, I can't find one.  He also claims that the grade of the front door isn't 60"x60" flat, but provides no indication, let alone evidence, as to what grade it actually is.  He then cites to Standard 404 addressing the various requirements of door maneuvering clearances and door widths, but he provides no evidence as to what the Defendants' clearances or widths are.  This is simply not clear and convincing evidence of non-compliance.

Finally, Oberloh contends that the on-street bus stops do not comply with Standard 209.2.3.  I don't see how that applies to Defendants.  Not only do Defendants represent that there are no established bus stops near their business (DE 53 at 16), but I also fail to see how even if there was one, Defendants would have any control over its compliance with the Standards.  I would think that would be a municipal issue.  In any event, here again, Oberloh presents no evidence of non-compliance.

**Conclusion**

Ultimately, Oberloh has failed to meet the high bar required for a finding of contempt.  Though Oberloh advances a long list of complaints, he provides no evidence to support those claims.  Instead, he merely cites to the standards he alleges were violated and sometimes adds a conclusory statement that Defendants don't comply.  That's not good enough.  And Defendants have provided me with enough evidence to conclude that they're probably in substantial compliance on all of these issues, or at a minimum, they've made a reasonable and diligent effort to comply.  *Hyatt*, 621 F.3d at 692.  There's simply not enough here for me to find that Defendants have violated the Order, so I will **DENY** Oberloh's motion for contempt (DE 39).  Since judgment has already been entered in this matter (DE 38), there are no other pending motions, and this case was reopened solely for the purposes of adjudicating the contempt motion (DE 48), the Clerk is directed to **CLOSE** this case.


      **SO ORDERED.**

ENTERED: March 11, 2015

                s/Philip P. Simon              
                PHILIP P. SIMON, CHIEF JUDGE
                UNITED STATES DISTRICT COURT